UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
3:21-cv-00184-RJC
(3:13-cr-00307-RJC-DCK-1)

| | |
|---|---|
| SHAHID HASSAN MUSLIM, ) | |
| ) | |
| Petitioner, ) | |
| ) | |
| vs. ) | **O R D E R** |
| ) | |
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Respondent. ) | |
| _____ ) | |

**THIS MATTER** is before the Court on the following:

(1) Petitioner's Pro Se Motion to Vacate, Set Aside, or Correct Sentence Under 28 U.S.C. § 2255 [CV Doc. 1[1]];

(2) Petitioner's Pro Se "Motion to Supplement 2255 petition" [CV Doc. 1-1];

(3) Petitioner's Pro Se "Omnibus Motion" [CV Doc. 2];

(4) Petitioner's "Motion to Recuse (28 U.S.C. 455(a))" [CV Doc. 3];

(5) Petitioner's "Motion to Disqualify Judge Pursuant To (28 U.S.C. 144)" [CV Doc. 4];

(6) Petitioner's "Motion for Stay of 28 U.S.C. 2255 Petition" [CV Doc. 5];

(7) Petitioner's motion to stay [CV Doc. 16];

(8) Petitioner's "Motion to Reconsider[;] Motion to Stay Proceedings or hold proceedings in Abeyance [CV Doc. 18]; and

---

[1] Citations to the record herein contain the relevant document number referenced preceded by either the letters "CV," denoting that the document is listed on the docket in the civil case file number 3:21-cv-00184-RJC, or the letters "CR," denoting that the document is listed on the docket in the criminal case file number 3:13-cr-00307-RJC-DCK-1.

(9) Petitioner's Response to Braxton Order [Doc. 19].

## I. BACKGROUND

On May 13, 2014, Petitioner Shahid Hassan Muslin ("Petitioner") was charged in a Second Superseding Bill of Indictment with four counts of interstate and foreign travel or transportation in aid of racketeering in violation of 18 U.S.C. § 1952(a)(3)(A) (Counts One, Two, Eight, and Nine); one count of coercing a minor to engage in sexually explicit conduct for the purpose of producing child pornography in violation of 18 U.S.C. § 2251(a) (Count Three); one count of recruiting and maintaining a minor over the age of 14 knowing the minor would be caused to engage in a commercial sex act in violation of 18 U.S.C. §§ 1591(a)(1) and (b)(2) (Count Four); one count of kidnapping in violation of 18 U.S.C. § 1201(a)(1) (Count Five); one count of sex trafficking by force, fraud or coercion in violation of 18 U.S.C. §§ 1591(a)(1) and (b)(1) (Count Six); one count of interstate and foreign travel or transportation in aid of racketeering enterprises and performed and attempted to perform a crime of violence in violation of 18 U.S.C. §§ 1952(a)(3)(B) and (a)(2) (Count Seven); and one count of obstruction of justice in violation of 18 U.S.C. § 1512(d)(2) (Count Ten). [CR Doc. 24: Second Superseding Bill].

Petitioner pleaded not guilty and proceeded to trial. The Court granted three continuances of Petitioner's trial before eventually setting it peremptorily to begin on August 4, 2014. [See CR Docs. 11, 12, 18, 19, 33, 34]. On August 3, 2014, Petitioner moved again to continue the trial, which the Court denied. [CR Doc. 56; 8/4/2014 Docket Entry]. After a week-long trial, the jury found Petitioner guilty on all counts. [CR Doc. 70: Jury Verdict; CR Doc. 160: Judgment]. The evidence at trial showed that Petitioner was a violent and manipulative sex trafficker. He preyed on, controlled, and exploited particularly vulnerable young women and girls for his own profit. He perpetrated callous, depraved, and violent conduct against his victims, four of whom testified

at the trial.[2]

On May 3, 2016, this Court sentenced Petitioner to a term of life imprisonment on Counts Four, Five, and Six; a term of 60 months' imprisonment on Counts One, Two, Eight, and Nine; a term of 360 months' imprisonment on Count Three; a term of 240 months' imprisonment on Count 7; and a term of 36 months' imprisonment on Count Ten, with all terms of imprisonment to run concurrently. [CR Doc. 160 at 3]. Judgment was entered on May 18, 2016. [Id.]. Petitioner appealed. [CR Doc. 162]. Petitioner asserted eight grounds on appeal, most of which related to the conduct of Petitioner's trial. As one ground, Petitioner claimed a complete miscarriage of justice. United States v. Muslim, 944 F.3d 154, 159 (4th Cir. 2019).

On November 25, 2019, the Fourth Circuit affirmed Petitioner's conviction and sentence in a published opinion. Id. After addressing all Petitioner's other grounds on appeal, the Fourth Circuit held that Petitioner's miscarriage of justice claim was meritless. Id. at 169-70. Petitioner did not petition the Supreme Court for certiorari. As such, for purposes of 28 U.S.C. § 2255(f), Petitioner's conviction became final on February 24, 2020,[3] when the deadline to file a petition for certiorari expired, and Petitioner had one year, or until February 23, 2021, within which to file a § 2255 motion. See Clay v. United States, 537 U.S. 522, 532 (2003).

---

[2] Since the verdict in Petitioner's criminal case, he has repeatedly claimed that the transcripts of the trial and then the sentencing were nefariously altered for various reasons, including to the Fourth Circuit on Petitioner's appeal. [See CR Docs. 175, 189-1, 224; CV Docs. 3, 4, 4-1]. On appeal, Petitioner moved for correction or modification of the record based on Petitioner's claims that transcripts were altered, including the alteration and omission of certain testimony, arguments, and instructions, all to Petitioner's detriment. [CR Doc. 189-1]. On remand, to address this motion, the Court Reporter to all the relevant proceedings compared the "challenged portions of the transcripts detailed in [Petitioner's] Motion (Doc. No. 189-1), with the original stenographic notes which are a complete verbatim record of the District Court proceedings in this matter" and certified that the filed transcripts "do not contain any omissions, additions, or altered testimony or statements." [CR Doc. 191].

[3] Ninety days from November 25, 2019 fell on February 23, 2020, a Sunday, making the conviction final on Monday, February 24, 2020. See Sup. Cr. R. 30(1).

On April 14, 2020, Petitioner filed a motion for an extension of time to file his § 2255 motion to vacate in his criminal proceeding, based primarily on COVID-19-related restrictions at Coleman – FCI, his then current place of incarceration. [CR Doc. 214]. The Court denied this motion, reminding Plaintiff that "he has one year from the date the judgment became final to file a motion to vacate" and that he "may file such a motion without all of the supporting legal authority." [CR Doc. 215 at 2]. Petitioner was also instructed that "prison lockdowns are not grounds for equitably tolling the 2255 limitations period." [Id. at 1]. Petitioner appealed the denial of this motion. [CR Doc. 216]. The Fourth Circuit affirmed the Court's ruling. [CR Doc. 219].

Then, on February 16, 2021, in his criminal proceedings, Petitioner filed motions for recusal and to disqualify the undersigned in anticipation of his filing a motion to vacate. [CR Docs. 221, 222]. The Court denied these motions as moot because there were no pending matters before the Court. [CR Doc. 223]. On March 2, 2021, Petitioner filed a "Motion for Stay of 28 U.S.C. 2255 Petition" pending the outcome of Petitioner's motions to recuse and disqualify the undersigned.[4] [CR Doc. 224]. At that time, the Court had not received Petitioner's motion to vacate. The Court, therefore, denied Petitioner's motion to stay because "it lack[ed] jurisdiction to extend AEDPA's limitation period prior to a motion to vacate being filed because no case or

---

[4] This motion to stay was docketed with 234 pages containing 41 grounds for relief asserted by Petitioner under § 2255. [CR Doc. 224 at 3-236]. These 234 pages were later identified by Petitioner as the grounds for his motion to vacate. [CV Doc. 1-1 at 1]. These pages were received for mailing by prison officials at Coleman on February 24, 2020, [CR Doc. 224-2], and were never recategorized by this Court as part of Petitioner's motion to vacate. In reviewing Petitioner's filings in this case and in his criminal proceeding, it appears that the docketing of Petitioner's motion to vacate and other filings was confused and complicated by difficulties and limitations encountered by prison officials in mailing Petitioner's lengthy and, therefore, heavy motion to vacate. Documents were combined and separated in ways that are inconsistent with their content and affect. Some documents, including Petitioner's motion to vacate, were mailed back to the prison for insufficient postage and then resent for filing with this Court, which compounded the confusion. Finally, the Certificates of Service attached to several of Petitioner's motions are dated December 31, 2020, which are clearly false and further confuse mattes now. [CR Doc. 224 at 2; CV Doc. 1-1 at 5; CV Doc. 3 at 3; CV Doc. 4 at 3; CV Doc. 5 at 2].

controversy exists." [CR Doc. 225].

On April 21, 2021, the Court received and docketed Petitioner's motion to vacate[5] and motion to supplement.[6] [CV Docs. 1, 1-1]. In the motion to supplement, Petitioner references his "2255 petition grounds filed under Doc. 224," which is the motion to stay just discussed. [Id. at 1]. Petitioner asks that ground number 31 be supplemented with reports that he purportedly obtained from cyber security and digital forensic experts and "a list of business locations of Secure Forensics, which is precisely what the defendant required for his defense." [Id. at 3].

The same day, several motions by Petitioner were filed in his criminal proceeding, including the "Omnibus Motion," a motion for recusal, a motion to disqualify, and another motion to stay. [CR Docs. 226-229]. The Court noted that "[t]he gravamen of defendant's motions is that the Court should not preside over the recently filed § 2255 petition … based on alleged bias resulting from this criminal case." [CR Doc. 231]. The Court held, therefore, that the motions would be more appropriately considered in the civil case and ordered they be terminated and re-filed in the instant proceeding. [Id.]. These motions were retroactively filed in this case on April 21, 2021 and remain pending here. [CV Docs. 2-5].

On May 3, 2021, this Court conducted its initial screening of Petitioner's motion to vacate and determined, even giving Petitioner the benefit of assuming he had given his motion to prison

---

[5] This document was submitted on the form for Motions Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence. Petitioner, however, omitted all the pages that are designated for petitioners to state their grounds for relief and filed only nine of the total 13 pages of this form. [See CV Doc. 1]. Petitioner argued that his motion was timely based on the errant calculation that his motion was due on February 25, 2021, not February 23, 2021. [Id. at 7]. Petitioner argued that "[t]his 2255 petitioner was submitted to prison officials on February 24, 2021…" [Id.].

[6] The motion to supplement was transmitted with and filed as an exhibit to Petitioner's motion to vacate. [See CV Docs. 1, 1-1]. It appears, however, as far as the Court can discern, that Petitioner's motion to vacate was separated from the 234-page document containing his grounds for relief and, after having been returned to the prison for insufficient postage, later transmitted with the motion to supplement. The Court gives Petitioner the benefit of this conclusion, in any event.

officials for mailing on February 24, 2021, it appeared untimely. [CV Doc. 6]. The Court ordered that Petitioner had 20 days to explain why the § 2255 motion to vacate should not be dismissed as untimely, including any reasons why equitable tolling should apply. [Id. at 3-4]. There was, however, a typographical error in the Court's Braxton Order in which the Court noted that "Petitioner's conviction became final on February 24, 2020, when the deadline to file a petition for certiorari expired, and Petitioner has one year, or until February 23, 2019, within which to file a § 2255 motion." 2019 should have read 2021. [Id. at 3].

On June 1, 2021, after the deadline to respond to the Braxton Order had expired, Petitioner mailed a motion for extension of time to respond to the Braxton Order, claiming he only received it on the evening of May 27, 2021, which "is essentially the weekend." [CV Doc. 7]. The Court granted the motion and extended Petitioner's deadline to respond to the Braxton Order until June 24, 2021. [CV Doc. 8].

On June 14, 2021, presumably before receiving the Court's Order extending the deadline, Petitioner moved again for more time to respond to the Braxton Order. [CV Doc. 9]. In this motion, Petitioner pointed out the typographical error in the Court's Order and sought clarification. [Id.]. On June 22, 2021, Petitioner filed a Notice of Appeal from the Court's May 3, 2021 Braxton Order.[7] [CV Doc. 10]. Petitioner "specifically objects and appeals the district court's designation of [his] Motion to Vacate, Set Aside, or Correct Sentence (28 U.S.C. 2255), as untimely." [Id.]. The appeal remains pending before the Fourth Circuit.[8]

---

[7] Although it was dated June 1, 2021, the envelope transmitting the appeal was not postmarked until June 16, 2021. [CV Doc. 10-1].

[8] The general rule is that the filing of a timely and sufficient notice of appeal immediately transfers jurisdiction of all matters relating to the appeal from the district court to the court of appeals. Grand Jury Proceedings Under Seal v. U.S., 947 F.2d 1188, 1190 (4th Cir. 1991) (citations omitted). The district court, however, "does not lose jurisdiction to proceed as to matters in aid of the appeal." Id. (citation omitted). Here, Petitioner has appealed from the Court's Braxton Order, which found that Petitioner's motion to

6

Case 3:21-cv-00184-RJC   Document 20   Filed 09/29/21   Page 6 of 16

On July 2, 2021, the Court provided Plaintiff the clarification he sought, advising him that the statute of limitations for filing his § 2255 expired on February 23, 2021, not February 23, 2019 (the "Clarification Order"). [CV Doc. 14 at 1]. The Court again extended the deadline and ordered Petitioner to respond to the Braxton Order by July 8, 2021. [Id.]. On July 9, 2021, Petitioner filed another motion to stay these proceedings. [CV Doc. 16]. As grounds, Petitioner stated that he was in Oklahoma in the process of being transferred from Coleman to Terre Haute – FCI ("Terre Haute") in Terre Haute, Indiana; that he had requested documentation from prison officials for his response to the Court's Braxton Order; and that he did not know when he would receive his mail forwarded from Coleman. [Id.]. Petitioner sought a stay to "protect his rights." [Id.].

On July 13, 2021, the Court's Clarification Order was returned as undeliverable because it had been mailed before Petitioner's address was updated in the docket in this matter.[9] [CV Doc. 17]. The Court resent the Clarification Order to Petitioner at Terre Haute. [7/21/2021 Docket Entry]. On August 10, 2021, Plaintiff filed yet another motion to stay, stating that he did not receive the Clarification Order until "just today 7/27/21 Tuesday at 5:00 PM." [CV Doc. 18 at 1]. Petitioner states that he now understands that his motion to vacate was filed one day late and that he needs more time to prove that equitable tolling applies. [Id.]. Petitioner states that he arrived at Terre Haute on July 15, 2021, that he had been in transit since June 22, 2021, and that he "is currently being held in quarantine for between 2 to 3 weeks." [Id.]. Petitioner claims that he has not been given his property yet because he is in quarantine and that "his property contains the

---

vacate appeared untimely and gave Petitioner the chance to explain why it was not. Now, he has responded, and the Court is equipped to make a definitive determination regarding the timeliness of his motion to vacate, which will aid in the appeal to the extent the appellate court does not dismiss Petitioner's appeal as interlocutory. In any event, Petitioner may appeal from the final judgment in his case, if he so chooses.

[9] Petitioner never filed a Notice of Change of Address in this matter. Petitioner's address was updated by the Clerk based on a return address on one of Plaintiff's filings. [See 7/13/2021 Docket Entry].

evidence required to prove equitable tolling applied." [Id. at 2]. Petitioner also argues that he "has repeatedly explained and proven to this court that all of his mail at Coleman was being held anywhere from 3 weeks to a month before, being delivered to him." [Id. at 1]. Petitioner, therefore, asks the Court "to simply stay the proceedings long enough only for the defendant to clear quarantine and contact the officials at Coleman U.S.P.-1 with the courts clarification." [Id. at 2]. In the alternative, Petitioner asks for a 60-day extension of the deadline to respond to the Braxton Order. [Id.]. Petitioner states he will then "submit with all haste the proof that equitable tolling applies in this case." [Id. at 2]. Accordingly, giving Petitioner the benefit of an additional 60 days to file a response to the Braxton Order, Petitioner's response would have been due on September 6, 2021, which was 60 days after the current (expired) deadline of July 8, 2021.

On September 7, 2021, Petitioner finally filed his response to the Braxton Order, which was dated and mailed on August 29, 2021.[10] [CV Doc. 19]. Petitioner concedes that his motion to vacate was untimely and argues for application of equitable tolling. [See id. at 3]. As grounds, Petitioner shows that "outgoing special mail" weighing 16 ounces or greater is processed as a package and requires a Form BP-329, Request Authorization to Mail Inmate Package. [CV Doc. 19 at 18]. Petitioner states that beginning on February 5, 2021, he begged the Unit Counselor responsible for signing package authorizations and arranging legal copies to mail his motion to vacate every day and that the Unit Counselor refused, stating that the mailroom was closed during lockdown. The Unit Counselor stated that he and other staff had been "augmented to perform shakedowns during lockdowns." [Id. at 2]. Petitioner also state1d that on February 10, 2021 he submitted a "cop-out to the counselor" requesting help mailing his motion to vacate. This request was made on an Inmate Request to Staff form. It was denied on February 17, 2021. [CV Doc. 19

---

[10] The second page of Petitioner's response appears to be missing. [See CV Doc. 19 at 1-2].

at 2, 22]. Then, on February 18, 2021, Petitioner submitted a second Inmate Request to Staff seeking assistance to mail his motion to vacate. [Id.; id. at 24]. In this request, Petitioner asked if it would be possible for the official to mail it out or to "just cuff [him] and take [him] to the mailroom to do the package authorization." [Id. at 24]. This second request was denied on February 22, 2021. [Id.]. Finally, on February 24, 2021, the day after the expiration of the limitations period, the Unit Counselor took Petitioner to the mailroom, where Petitioner mailed the motion to vacate using a Request Authorization to Mail Inmate Package form, which was dated February 24, 2021. [Id. at 3, 26]. Petitioner contends that these facts demonstrate that he diligently pursued his rights. [Id. at 3-4]. Petitioner argues that extraordinary circumstances "stood in his way" of his timely filing his motion to vacate because he could not mail anything 16 ounces or greater without special authorization from his Unit Team and "several requests to mail out his § 2255 motion were totally denied by the Unit Team counselor." [Id. at 4].

## II. STANDARD OF REVIEW

Rule 4(b) of the Rules Governing Section 2255 Proceedings provides that courts are to promptly examine motions to vacate, along with "any attached exhibits and the record of prior proceedings . . ." in order to determine whether the petitioner is entitled to any relief on the claims set forth therein. After examining the record in this matter, the Court finds that the arguments presented by Petitioner can be resolved without an evidentiary hearing based on the record and governing case law. See Raines v. United States, 423 F.2d 526, 529 (4th Cir. 1970).

## III. DISCUSSION

### A. Motions to Recuse and Disqualify

The Court first addresses Petitioner's motions for recusal and to disqualify the undersigned. Petitioners moves under 28 U.S.C. §§ 455(a) and 144, respectively, and asserts the same 15 reasons in support of both motions. [CV Docs. 3, 4]. In summary, these grounds include adverse rulings relative to Petitioner's criminal proceedings that Petitioner believes demonstrate the undersigned's partiality, Petitioner's complaints of judicial misconduct against the undersigned, the alleged destruction of audio footage and doctoring of trial transcripts to cover up prosecutorial and judicial misconduct and physical assault on Petitioner during trial and at sentencing, and general statements purporting to demonstrate the undersigned's bias, including the undersigned's favoritism for the prosecution, encouragement of the prosecution to rush the trial process so that Petitioner's counsel would be unprepared, and "contentious arguments" between the undersigned and Petitioner during trial. [Id.].

Section 144 provides, in pertinent part, as follows:

> Whenever a party to any proceeding in a district makes and files a timely and sufficient affidavit that the judge before whom the matter is pending has a personal bias or prejudice either against him or in favor of any adverse party, such judge shall proceed no further therein, but another judge shall be assigned to hear such proceeding.
>
> The affidavit shall state the facts and reasons for the belief that bias or prejudice exists … [and] shall be accompanied by a certificate of counsel of record stating that it is made in good faith.

28 U.S.C. § 144. "The statutory language of Section 144 appears to prevent a *pro se* litigant from using Section 144 to obtain disqualification of the presiding judge." Robinson v. Gregory, 929 F.Supp. 334, 337 (S.D. Ind. 1996).

> The purpose of this section is to secure for all litigants a fair and impartial trial before a tribunal completely divested of any personal bias or prejudice, either for or against any part of the proceedings, and it is the duty of all courts to scrupulously adhere to this admonition and to guard against any appearance of personal bias or prejudice which might generate in the minds of litigants a well-

> grounded belief that the presiding judge is for any reason personally biased or prejudiced against their cause. <u>But the statute, by its own terms, provides a safeguard against the abuse of the privilege granted by the statue, and that well-founded safeguard is the requirement that the affidavit must be accompanied by a certificate of counsel of record, and without which the affidavit is ineffectual to disqualify the judge. This requirement is founded on the assumption that a member of the bar or counsel of record will not indulge in reckless disregard of the truth, and further attests to the good faith and belief of the affiant</u>.

<u>Id.</u> (quoting <u>Mitchell v. United</u>, 126 F.2d 550, 552 (10th Cir. 1942) (emphasis added)). If pro se litigants were allowed to use § 144, "the statute's essential safeguard of counsel's certificate of good faith is lost." <u>Davis v. Cogburn</u>, No. 5:17-MC-47-BA, 2017 WL 5616737, at *2 (E.D.N.C. May 11, 2017). Moreover, pro se litigants can raise the same issues under 28 U.S.C. § 455. <u>Id.</u>

With his § 144 motion to disqualify, Petitioner submitted an Affidavit that contained a purported "Certificate of Counsel" attesting that the motion and Affidavit were made in good faith. [<u>See</u> Doc. 4-1 at 3]. Because Petitioner is proceeding pro se, he cannot file a certificate of counsel as contemplated by § 144. The Court, therefore, will deny Petitioner's motion under § 144 and turns to his motion under § 455(a).

Section 455(a) provides that any judge of the United States "shall disqualify himself in any proceeding in which is impartiality might reasonably be questioned." 28 U.S.C. § 455(a). Under this provision, "[a] federal judge is obliged to recuse himself if a person with knowledge of the relevant facts might reasonably question his impartiality." <u>United States v. Cherry</u>, 330 F.3d 658, 665 (4th Cir. 2003) (citing 28 U.S.C. § 455(a)).

> The test is an objective one …. The inquiry is whether a reasonable person would have a reasonable basis for questioning the judge's impartiality, not whether the judge is in fact impartial. A presiding judge is not, however, required to recuse himself because of unsupported, irrational or highly tenuous speculation. Put simply, the proper test to be applied is whether another with knowledge of all of the circumstances might reasonably question the judge's

> impartiality.

Id. (internal quotation marks and citations omitted).

> First, judicial rulings alone almost never constitute valid basis for a bias or partiality motion…. Almost invariably, they are not proper grounds for appeal, not recusal. Second, opinions formed by the judge on the basis of facts introduced in the course of current proceedings, or of prior proceedings, do not constitute a basis for a bias or impartiality motion unless they display deep-seated favoritism or antagonism that would make fair judgment impossible. …*Not* establishing bias or partiality, however, are expressions of impatience, dissatisfaction, annoyance, and even anger, that are within the bounds of what imperfect men and women, even after having been confirmed as federal judges, sometimes display. A judge's ordinary efforts at courtroom administration—even a stern and short tempered judge's ordinary efforts at courtroom administration—remain immune.

Liteky v. United States, 510 U.S. 540, 555, 114 S.Ct. 1147, 1157-58 (1994) (internal citation omitted).

As grounds to disqualify, Petitioner claims bias based on some of the Court's rulings relative to Petitioner's criminal proceedings, wholly unfounded and previously addressed claims that the criminal trial transcript was doctored and that U.S. Marshals at trial gratuitously physically assaulted him, and several claims related to Petitioner's complaints of judicial misconduct against the undersigned. Moreover, at least two of the grounds Petitioner argues in support of disqualification were addressed and upheld by the Fourth Circuit on appeal, including the denial of Petitioner's fourth motion to continue the trial, which Petitioner made the day before the peremptorily set trial was set to begin, and the way the Court handled Petitioner's voluntary absence from the courtroom on the second day of the trial. See Muslim, 944 F.3d at 159-61. In short, Petitioner's claims of judicial bias are nothing more than insufficient disagreements with the Court's rulings, see Liteky, 510 U.S. at 555, and "unsupported, irrational or highly tenuous speculation," see Cherry, 330 F.3d at 655.

12

Moreover, if history is any indicator, if the Court were to grant Petitioner's motion to disqualify the undersigned, Petitioner would simply take issue with and move to disqualify any other judge assigned to this case. Petitioner continues to evince an unfounded, but profound and unwavering skepticism of this Court and the judicial process. The Court will not allow Petitioner to persist in impeding and delaying the judicial process, particularly where no reasonable person with knowledge of all the circumstances would reasonably question the undersigned's impartiality.

The Court, therefore, will deny Petitioner's motions to recuse and to disqualify the undersigned and turns to the timeliness of Petitioner's motion vacate.

### B. Timeliness of Motion to Vacate

As Petitioner concedes, his motion to vacate was untimely under 28 U.S.C. § 2255(f). The Court, therefore, addresses whether equitable tolling should apply to allow consideration on the merits. To be entitled to equitable tolling, "an otherwise time-barred petitioner must present '(1) extraordinary circumstances, (2) beyond his control or external to his own conduct, (3) that prevented him from filing on time.'" United States v. Sosa, 364 F.3d 507, 512 (4th Cir. 2004) (quoting Rouse v. Lee, 339 F.3d 238, 246 (4th Cir. 2003), cert. denied, 541 U.S. 905, 124 S. Ct. 1605 (2004)). A petitioner must show he has been "pursuing his rights diligently." Holland v. Florida, 560 U.S. 631, 649 (2010). Further, equitable tolling is limited to "rare instances – where due to circumstances external to the party's own conduct – it would be unconscionable to enforce the limitation period against the party and gross injustice would result." Whiteside v. United States, 775 F.3d 180, 184 (4th Cir. 2014) (quoting Rouse v. Lee, 339 F.3d 238, 246 (4th Cir. 2003)).

Petitioner fails to meet this very high standard. The delays Petitioner experienced in mailing his motion to vacate were because it was excessively and unnecessarily long. Had

13

Petitioner prepared a motion to vacate that weighed less than a pound, he could have mailed it without issue. Petitioner claims he was "forced to submit his unabridged rough draft of his 2255 motion due to time constraints, and looming deadline." [CV Doc. 2 at 2]. The Court is not convinced. The trial in this matter concluded on August 11, 2014, after the jury found Petitioner guilty. [CR Doc. 70]. Judgment on Petitioner's conviction was entered on May 18, 2016, [CR Doc. 160], and the Fourth Circuit affirmed his conviction on November 25, 2019. Petitioner had over six years to consider his arguments and to write a motion to vacate that he could have timely mailed. Any argument that Petitioner lacked time to "abridge" his motion to vacate so that he could mail it without difficulty is without merit. Moreover, as Petitioner was instructed, prison lockdowns are not grounds for equitably tolling the 2255 limitations period. [CR Doc. 215]. Thus, Petitioner has failed to show that the inability to timely file his motion to vacate was external to his own conduct or the result of extraordinary circumstances.

Moreover, this is not a rare instance where it would be unconscionable to enforce the limitations period against Petitioner. The Fourth Circuit addressed many of Petitioner's complaints, either directly or indirectly, already when it affirmed Petitioner's conviction. While Petitioner is convinced of judicial and prosecutorial bias and misconduct, the Court has bent over backwards to accommodate Petitioner both in this proceeding and the underlying criminal matter. Whether Petitioner's motion to vacate was a day late or a year late, it was late and equitable tolling does not apply.

The Court, therefore, will deny and dismiss Petitioner's motion to vacate as untimely and deny Petitioner's motion to supplement, "Omnibus Motion," and motions to stay, Docket Nos. 5 and 16, as moot. The Court will grant Petitioner's motion at Docket No. 18 insofar as the Court extends the deadline for Petitioner to respond to the Court's <u>Braxton</u> Order until September 6,

2021, such that it was timely filed.

## V. CONCLUSION

For the foregoing reasons, the Court denies Petitioner's § 2255 Motion to Vacate.

The Court further finds that Petitioner has not made a substantial showing of a denial of a constitutional right. See generally 28 U.S.C. § 2253(c)(2); see also Miller-El v. Cockrell, 537 U.S. 322, 336-38 (2003) (in order to satisfy § 2253(c), a "petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong") (citing Slack v. McDaniel, 529 U.S. 473, 484-85 (2000)). Petitioner has failed to demonstrate both that this Court's dispositive procedural rulings are debatable, and that the Motion to Vacate states a debatable claim of the denial of a constitutional right. Slack v. McDaniel, 529 U.S. at 484-85. As a result, the Court declines to issue a certificate of appealability. See Rule 11(a), Rules Governing Section 2255 Proceedings for the United States District Courts, 28 U.S.C. § 2255.

## ORDER

**IT IS, THEREFORE, ORDERED** that:

(1) Petitioner's Motion under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence [Doc. 1] is **DENIED** and **DISMISSED** with prejudice.

(2) Petitioner's motion to supplement [Doc. 1-1], "Omnibus Motion" [Doc. 2], motions to stay [Docs. 5, 16] are **DENIED as moot**.

(3) Petitioner's Motion to Recuse [Doc. 3] and Motion to Disqualify [Doc. 4] are **DENIED**.

(4) Petitioner's "Motion to Reconsider[;] Motion to Stay Proceedings or hold proceedings in Abeyance" [Doc. 18] is **GRANTED in part** insofar as the deadline for Petitioner to respond to the Court's Braxton Order, [Doc. 6], is extended to

15

September 6, 2021. Any remaining requests for relief in this motion are **DENIED**.

(5)  Pursuant to Rule 11(a) of the Rules Governing Section 2254 and Section 2255 Cases, this Court declines to issue a certificate of appealability.

**IT IS SO ORDERED**.

Signed: September 29, 2021

Robert J. Conrad, Jr.
United States District Judge

16

Case 3:21-cv-00184-RJC   Document 20   Filed 09/29/21   Page 16 of 16